113 N.J. Super. 271 (1971)
273 A.2d 602
ISAAC BACON AND HEDVIG BACON, HIS WIFE, AND HEDVIG BACON AND ISAAC BACON, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
ALLEN LEE MILLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 1971.
Decided February 5, 1971.
*273 Before Judges SULLIVAN, COLLESTER and LABRECQUE.
Mr. Joseph D. O'Neil argued the cause for appellant (Messrs. Shapiro, Brotman, Eisenstat & Capizola, attorneys).
Mr. Burchard V. Martin argued the cause for respondents (Messrs. Taylor, Bischoff, Williams & Martin, attorneys; Mr. G. Paul Crawshaw, on the brief).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Although defendant Allen Lee Miller is the named appellant, in actuality the Unsatisfied Claim and Judgment Fund Board (the Board) appeals from an order denying defendant's motion to vacate an order directing payment of judgments in favor of plaintiffs and against Miller out of the Unsatisfied Claim and Judgment Fund (the Fund).
The facts are not in substantial dispute. On August 29, 1966 a vehicle owned and operated by Miller (who was uninsured) *274 failed to stop before entering a through street and collided with one driven by plaintiff Hedvig Bacon in which plaintiff Isaac Bacon was a passenger. The contact between the two cars took place approximately in the center of the intersection and the cars thereafter went over the curb onto the sidewalk, the Miller vehicle striking three pedestrians who were standing at the corner.
Both plaintiffs, as well as the three pedestrians, suffered injuries for which they subsequently brought suit. There was a trial as to liability in the County Court, resulting in a verdict holding Miller solely responsible. Sometime thereafter a settlement was negotiated for the injuries sustained by the three pedestrians, all minors, for a total of $19,000. Following the settlement judgment was entered and two orders, the last one dated November 14, 1967, directed payment of the $19,000 total out of the Fund.
Fourteen months thereafter plaintiffs' case was tried as to damages, resulting in judgments which totalled $3,755. They thereupon moved, on notice to the Board, for an order directing payment from the Fund. On the return day of the notice no one appeared representing defendant or the Board. Although N.J.S.A. 39:6-69 and 73 restricted payments from the Fund to $20,000 for each accident, we are not clear as to whether the court was advised that $19,000 had already been paid out of the Fund in settlement of the claims of the three pedestrians. The court thereupon entered an order directing payment out of the Fund of the full amount of plaintiffs' judgments.
However, payment was not made and some three months later a motion was made to set aside the order for payment on the ground that the Fund's liability did not extend beyond $1,000, the balance allegedly available after payment of the amounts of the prior settlements. The trial judge denied the motion, holding that there had been two accidents within the contemplation of the statute.
Both sides concede that the sole question presented is whether defendant was involved in one or two accidents. Defendant *275 contends that there was but one accident, while plaintiffs argue that the striking of the pedestrians was a second separate accident. On the basis of the facts hereinabove referred to, we conclude that there was but one accident within the intendment of the statute, and that the liability of the Fund to all persons injured could not exceed the sum of $20,000. N.J.S.A. 39:6-69 and 73.
There can be no question but that the statute creating the Unsatisfied Claim and Judgment Fund Board is remedial legislation, to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse, and to the fulfillment of the essential legislative policy. Giles v. Gassert, 23 N.J. 22, 34 (1956); Robson v. Rodriquez, 26 N.J. 517 (1958). However, while liberality of construction of remedial legislation is desirable, we are not free to ignore the plain meaning of the language employed by the Legislature. Wormack v. Howard, 33 N.J. 139, 142 (1960). In line with our duty to interpret the statute we are required to give effect to such language in order to properly effectuate the legislative design. Dixon v. Gassert, 26 N.J. 1, 9 (1958). Of a certainty, the language used does not reflect an intention to make every claimant completely whole, but is intended to provide some measure of relief to those persons who come within the class intended to be protected. Corrigan v. Gassert, 27 N.J. 227, 233 (1958).
The issue here presented does not appear to have been passed upon by the courts of this or any of our sister states. For the most part, the parties rely upon cases involving clauses fixing the maximum liability of insurance carriers as to damages arising from one accident.
Plaintiffs, however, cite two cases involving liability under the Unsatisfied Judgment Fund provisions of the Highway Traffic Act of Newfoundland as supporting their contention that there were two accidents here. We find neither case to be apposite. In Carroll v. Furlong, 37 Mar. Prov. 69, [1955] 3 D.L.R. 279 (Newf. Sup. Ct. 1955), the accident *276 occurred when defendant, while drunk, collided with three separate cars over a space of one-quarter of a mile. While the court there found that there were three accidents, it went on to state that "If one car were struck and driven onto another * * * I can see the argument for a single accident." In United Towns Electric Co. v. Bishop, [1955] 5 D.L.R. 782 (Newf. Sup. Ct. 1955), defendant drove his car across the center line of the highway to the left side and struck an oncoming car. He then returned to his side of the highway only to leave it again and strike a car which was stopped 40 feet behind the first one. Here, however, defendant did not straighten out after the accident but continued on an uninterrupted course onto the sidewalk.
Plaintiffs also rely heavily upon Liberty Mutual Insurance Co. v. Rawls, 404 F.2d 880 (5 Cir.1969). There, as defendant was proceeding along the highway at a very high rate of speed pursued by two deputy sheriffs, he struck the left rear of an automobile travelling in the same direction, knocking it off the highway. His automobile continued on, veered across the center line and thereafter collided head-on with an automobile travelling in the opposite direction. The court there noted that the "only reasonable inference" was that defendant had control of his vehicle after the initial collision. Here, as noted, defendant's vehicle went out of control following the initial collision. Anchor Casualty Co. v. McCaleb, 178 F.2d 322 (5 Cir.1950), on which plaintiffs also rely, is likewise inapposite (assuming it has not been overruled by St. Paul-Mercury Indemnity Co. v. Rutland, 225 F.2d 689 (5 Cir.1955)). There the court was dealing with an oil well which "blew in" while being drilled, releasing a tremendous gas pressure and erupting intermittently for approximately 50 hours. The eruption blew sand, oil and mud onto different properties in the area, depending upon the direction of the wind. Here the entire transaction could hardly have involved more than two seconds or covered a space of more than 18-25 feet.
*277 Our conclusion that defendant was involved in but one accident appears to accord with the majority view, regardless of whether based upon the "causation" test, the "time and space" test or the "popular meaning" test. See St. Paul-Mercury Indemnity Co. v. Rutland, supra; Truck Insurance Exchange v. Rhode, 49 Wash.2d 465, 303 P.2d 659, 55 A.L.R.2d 1288 (Sup. Ct. 1956); Hyer v. Inter-Insurance Exch., 77 Cal. App. 343, 246 P. 1055 (D. Ct. App. 1926); Denham v. LaSalle-Madison Hotel Co., 168 F. 2d 576 (7 Cir.1948), cert. den. 335 U.S. 871, 69 S.Ct. 167, 93 L.Ed. 415 (1948); see also Annotation, 55 A.L.R.2d 1300 (1957). The facts in Truck Insurance Exchange v. Rhode, supra, bear a strong resemblance to those before us in that there defendant drove his automobile over the center line of the highway and collided with the first of three motorcycles which were proceeding about 75 feet apart in echelon formation in the opposite direction. With the first collision the automobile turned counterclockwise and collided with the second motorcycle, then continued its turn and collided with the third. While each collision involved contact with a different part of defendant's automobile, it was clear that, as here, defendant's car was out of control from the time of the first contact.
We have reviewed the remaining points advanced by plaintiffs and find them to be without merit. They urge that we should adopt the "effect upon the injured person" rationale, i.e., that an "accident" occurs each time a person sustains an injury or injuries, as representing the statutory intention, arguing that it is the better reasoned test and that to apply it would be to encourage safe driving by making a negligent uninsured responsible for all injuries he causes. We disagree. Had the Legislature intended this interpretation, it would have had no reason to fix a limit on the compensation allowable for injuries sustained by any one person, and a separate limit on the aggregate damages for injuries sustained by all persons in one accident. Further, it is self-evident that our holding as to the extent of the liability *278 of the Fund in no wise lessens the responsibility of an uninsured for all the injuries he causes.
Since defendant was involved in but one accident, and hence the aggregate recovery from the Fund was limited to $20,000, the order for payment out of the Fund should have been limited to $1,000, divided pro rata between the two plaintiffs. Cf. Clarke v. Brown, 101 N.J. Super. 404 (Law Div. 1968).
While we recognize the seeming injustice sustained by plaintiffs here by reason of the delay in reducing their claim to judgment, we are not unmindful of the possibility that had the claims of the three pedestrians been reduced to judgment instead of settled, they might well have substantially exceeded $19,000. Situations of this kind place a heavy burden on the Board and its representatives to act fairly as between claimants, and we have no reason to believe that such was not the case here.
The judgment of the Salem County District Court is accordingly reversed and the case remanded for further proceedings in accordance with this opinion.
SULLIVAN, P.J.A.D. (concurring).
I fully agree that there was but one accident. However, I am troubled by the fact that at the time the court entered orders for payment out of the Fund of the settlement judgments in favor of the pedestrians, the Board was aware of plaintiffs' claims arising out of the same accident which had already been established as to liability and were only awaiting a trial as to the amount of damages. At first blush, it would appear that the Board should have sought to have the court withhold payment of the judgments totalling $19,000 in favor of the pedestrians until the amount of plaintiffs' claims, which almost certainly would have exceeded $1,000, had been determined. At that time the $20,000, the limit of the Fund's liability, could have been prorated and these plaintiffs could have been awarded their fair share of the available Fund monies. However, this issue was squarely passed upon in Clarke v. Brown, *279 101 N.J. Super. 404 (Law Div. 1968), where it was held that a claimant recovering a judgment against an uninsured driver was entitled to immediate payment out of the Fund to the extent that Fund monies were available, and that payment could not be withheld even though there were other claims for damages arising out of the same accident still pending, and there was a strong probability that the total amount of judgments against the uninsured driver would exceed the Fund's liability. This holding follows the general rule as to insurance coverage and limits of liability thereunder.
The rule seems a harsh one, and yet to withhold payment would deny a diligent or prudent claimant who has reduced his claim to judgment his legal rights. It would also seriously interfere with the ability of the Board to settle claims. On this basis the Board's handling of the instant matter was probably correct, although I am not happy about it.