124 N.J. Super. 466 (1973)
307 A.2d 639
WILKINSON & SON, INC., A NEW JERSEY CORPORATION AND GULF ATLANTIC TILE & TERRAZZO CORP., A DELAWARE CORPORATION, PLAINTIFF,
v.
PROVIDENCE WASHINGTON INSURANCE COMPANY, A RHODE ISLAND CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 19, 1973.
*467 Mr. Lee A. Trucker for plaintiff (Messrs. Norris, McLaughlin, Trucker & Marcus, attorneys).
Mr. Edward M. Gurry for defendant (Messrs. Gurry and Conlan, attorneys).
GAYNOR, J.C.C., Temporarily Assigned.
This is a motion for summary judgment by plaintiff Wilkinson & Son, Inc. in its action for a declaratory judgment determining its rights under a certain contractor's liability policy issued to it by defendant company.
The facts giving rise to this proceeding are not complicated and have been stipulated by the parties as follows:
1. Plaintiff Wilkinson & Son, Inc. is a contractor and in 1966 was performing certain work as a subcontractor in connection with the construction of a luxury high-rise apartment building.
2. In the course of performing its work on said apartment building plaintiff was required to remove traces of tile in 34 of the apartments in said building.
3. An employee of plaintiff, while removing the traces of tile in the 34 apartments, damaged the carpeting in each of the apartments by tracking on the carpeting, or depositing on the carpeting when placing his cleaning pail down, some of the cleaning material which contained an acidic or alkaline substance.
4. The work by plaintiff's employee, during which time the damage to the carpeting took place, was performed over a period of one or possibly two working days.
*468 5. At the time of the incident defendant insured plaintiff under a general liability policy for property damage caused by the acts of plaintiff or its agents.
6. The relevant provisions of said policy are as follows:

 SCHEDULE
AMOUNT AND BASIS OF DEDUCTIBLE COVERAGE
-----------------------------------------------------
$ xxxx per claim
 Bodily Injury Liability
$ xxxx per occurrence
$ 250 per claim
 Property Damage Liability
$ xxxx per occurrence

APPLICATION OF ENDORSEMENT (Enter here any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to all loss however caused:
It is agreed that:
1. The company's obligation under the Bodily Injury Liability and property Damage Liability Coverages to pay damages on behalf of the insured applies only to the amount of damages in excess of any deductible amounts stated in the schedule above as applicable to such coverages.
2. The deductible amounts stated in the schedule apply as follows:
(a) PER CLAIM BASIS  If the deductible is on a "per claim" basis, the deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of bodily injury sustained by one person, or to all property damage sustained by one person or organization, as the result of any one occurrence.
(b) PER OCCURRENCE BASIS  If the deductible is on a "per occurrence" basis, the deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of all bodily injury or property damage as the result of any one occurrence.
3. The terms of the policy, including those with respect to (a) the company's rights and duties with respect to the defense of suits and (b) the insured's duties in the event of an occurrence apply irrespective of the application of the deductible amount.
4. The company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the named insured shall promptly reimburse the company for such part of the deductible amount as has been paid by the company.
*469 The question before the court on this motion is whether the entire damage to the carpeting in all the apartments caused by plaintiff's employee constituted "one occurrence" or whether the damage to the carpeting in each of the 34 apartments constituted "one occurrence," within the meaning of the above-quoted policy provisions. Plaintiff contends that the entire damage to the carpeting was one occurrence, and accordingly, under the terms of the policy, defendant is responsible for the total amount of the damage in excess of $250, the deductible amount. Defendant, on the other hand, claims that its liability under the policy is the amount of the damage in excess of the sum of 34 times $250, on the ground that the carpet damage resulted from 34 separate occurrences and the deductible amount is applicable to each occurrence. In other words, defendant contends that the damage in each of the 34 apartments arose from and constituted a separate occurrence, with the deductible amount applicable to each of the 34 occurrences. Defendant also asserts that there were 34 separate claims made, inasmuch as the claim submitted for payment in accord with the policy itemized the amount of the damages to the carpeting in each of the 34 apartments. The question posed in this proceeding is a novel one in our State.
A definition of the term "one occurrence" is not included in the policy which was issued by defendant. In the absence of such definition the term must be given its plain, ordinary and popular meaning, and must be interpreted as understood by the average insured when purchasing the policy. See Cooper v. Government Employees Ins. Co., 51 N.J. 86 (1968); Edgewater National Bank v. Safeguard Ins. Co., 81 N.J. Super. 383 (App. Div. 1963); Arthur A. Johnson Corp. v. Indemnity Ins. Co., 6 A.D.2d 97, 175 N.Y.S.2d 414 (1958), and Elston-Richards Storage Co. v. Indemnity Co. of North America, 194 F. Supp. 673 (W.D. Mich. 1960). In the event of ambiguity or doubt as to the meaning of language used in an insurance policy, such language is to be resolved in favor of the insured. See Rotwein v. General Accident *470 Group & Cas. Co., 103 N.J. Super. 406 (Law Div. 1968); American Policyholders Ins. Co. v. Portale, 88 N.J. Super. 429 (App. Div. 1965), and Elston-Richards Co. v. Indemnity Ins. Co. of North America, supra.
A succinct statement of these accepted rules of construction, as applied in a case involving a policy provision similar to the one involved in the present case, is set forth in Arthur A. Johnson v. Indemnity Ins. Co., supra, as follows:
In seeking to ascertain the scope to be given words or phrases not explicitly defined in an insurance policy, we usually ascribe to them the ordinary and popular meaning, importing the construction that would be given them by the average assured when he purchased the policy (Abrams v. Great American Insurance Co., 269 N.Y. 90, 199 N.E. 15; Johnson v. Travelers' Insurance Co., 269 N.Y. 401, 408, 199 N.E. 637, 640.) When a substantial uniformity of opinion on a question of interpretation may be expected, resort to such popular standards is quite appropriate. However, when as in this case, the popular concept cannot be determined with comfortable assurance, other or at least supporting guides to construction must be explored to resolve the question.
When uncertainty and doubt arise from policy language susceptible of more than one meaning, we may adopt the oftquoted but seldom decisive formula of resolving all ambiguity against the insurer (Hartol Products Corp. v. Prudential Insurance Co. of America, 290 N.Y. 44, 47 N.E.2d 687). However, reliance on this standard makeweight does not furnish a ready solution to the controversy, since the difficulties stem not so much from doubt as to the meaning of policy language as from uncertainty as to the manner in which the contracting parties intended such language to be applied to an unusual factual situation.

* * *
* * * An accident, according to generally accepted definitions, is a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact (Lewis v. Ocean Accident and Guarantee Corp., Limited, of London, England, 224 N.Y. 18, 21, 120 N.E. 56, 7 A.L.R. 1129; Woodruff v. R.H. Howes Const. Co., 228 N.Y. 276, 278, 127 N.E. 270; Meyer v. New York Life Ins. Co., 249 App. Div. 243, 245, 291 N.Y.S. 912, 914; Berkowitz v. New York Life Ins. Co. 256 App. Div. 324, 10 N.Y.S.2d 106; 1 C.J.S. Accident, p. 427). There is no doubt that there was an accident in this case; the question is whether there was more than one.
The question of what constitutes a single occurrence within the meaning of a liability policy limiting the insurer's liability *471 to a specified amount or to the excess over a specified amount has been presented for judicial determination in a variety of factual situations. In these decided cases the courts have considered, without any indication of distinction, the various terms, such as "one or each occurrence," "one or each accident," "any one occurrence." "claims arising from one accident," used to express the singleness of the event insured against. Although it has been suggested that a construction of a "one accident or one occurrence" clause in a liability policy depends upon the court's philosophical approach as to whether such language refers to the cause or to the result of the event insured against, we are of the opinion that the instant proceeding can be determined without selecting either of such approaches to the exclusion of the other. See 55 A.L.R.2d 1300.
The cases relied upon by both parties are not factually analogous to the present case. The defendant relies heavily upon Elston-Richards Storage Co. v. Indemnity Co. of North America, supra, and Arthur A. Johnson Corp. v. Indemnity Ins. Co., supra. In Elston-Richards several thousand appliances were damaged over a period of about nine months as the result of the moving of each of the appliances with a defective motorized lift, and the court there determined that the damages were not the result of one event or occurrence but rather there were as many separate accidents as items damaged. The court relied upon the fact that "the damaged appliances were not all damaged at one time or on one day, but were damaged from day to day and from time to time as they were handled by the plaintiff."
In Johnson the court found that there were two separate accidents where it appeared the temporary retaining walls for two adjacent buildings, which had been installed by the insured in the course of performing work on a subway, collapsed almost simultaneously because of pressures caused by sudden flooding. The court reasoned that the acts of the assured resulting in the damage to the two buildings were *472 separate and divisible events, i.e., negligent construction of two separate structures at two separate locations giving rise to separate liabilities.
The parties also cite Truck Ins. Exchange v. Rhode, 49 Wash.2d 465, 303 P.2d 659 (1956) and Barrett v. Iowa National Mut. Ins. Co., 264 F.2d 224 (9 Cir.1959). In both of these cases there was one negligent act causing damage or injury to several persons  a fire in a building damaging property of each of the tenants and the collision of an automobile with three motorcycles. Similar events were the subject of St. Paul Mercury v. Rutland, 225 F.2d 689 (7 Cir.1955), and Denham v. LaSalle Madison Hotel, 168 F.2d 576 (9th Cir.1948). In each of these cases the court concluded that there was a single causative act, despite the multiple damage, for which the insurer was liable. This rule has been adopted in our State in a case involving a single negligent act. Bacon v. Miller. 113 N.J. Super. 271 (App. Div. 1971).
Ward Trucking Corp. v. Philadelphia National Ins. Co., 4 N.J. Super. 434 (App. Div. 1949), also cited by defendant, is not apposite inasmuch as that case involved the construction of a policy limiting the aggregate amount of the claims presented, and no determination was made as to an allocation between the various parties who had sustained damages resulting from the accident.
A consideration of the deductible provisions of the subject policy in the context of the event resulting in damage to the carpeting in the 34 apartments leads us to the conclusion that the property damage was the result of one occurrence. The acts imposing liability upon plaintiff were committed by one of its employees in the performance of a single and continuous operation completed within the course of one, or two, working days. The fact that items of property in 34 separate apartments were damaged by the employee during his performing the work does not transform this cleaning operation into 34 separate and divisible occurrences to which the deductible amount would be applicable. It is *473 our opinion that the ordinary and popular meaning which would be given to the term "one occurrence" by the average insured upon purchasing the policy, with reference to the incident giving rise to the present controversy, is that the entire event constituted a single occurrence for which there would be recovery subject to the deductible amount of $250. If it is considered that there is uncertainty as to the manner in which the parties intended such language to be applied to the present factual situation, then such uncertainty must be resolved against defendant.
Our conclusion is supported by the holdings in Haerens v. Commercial Cas. Ins. Co., 130 Cal. App.2d Supp. 892, 279 P.2d 211 (App. Ct. 1955), and Weissblum v. Glen Falls Ins. Co., 31 Misc.2d 132, 219 N.Y.S.2d 711 (City Ct. 1961), Rev'd on other grounds 40 Misc.2d 964, 244 N.Y.S.2d 689 (Sup. Ct. 1963), which involved factual situations analogous to the instant case. In Haerens an employee of a painting contractor negligently damaged a number of window panes in a building while sanding the metal strips separating the panes of glass. Defendant insurance company disclaimed liability for the damage on the ground that the damage to each pane gave rise to a separate claim and such damage was less than the deductible provision in the liability policy insuring the contractor. In holding that the company was responsible under the policy, the court stated:
Reverting to the $50 deductible provision, we find the word "claim" as there used neither certain in itself nor made certain by any provision of the policy. It is not unreasonable to say that the claim made upon the plaintiff by the contractor, to whom he was responsible, was for $425, the cost of replacing all the panes ruined by plaintiff's employee. Undoubtedly the defendant was responsible for the drafting of the policy that it issued. The ambiguity arising from the use of the word "claim" must therefore be construed against it. Coit v. Jefferson Standard Life Ins. Co., 1946, 28 Cal.2d 1, 3-4, 168 P.2d 163, 165, 168 A.L.R. 673. Had the defendant desired to shift to the assured the liability for each $50 item that goes to make up a claim, it should have chosen terms that made that meaning clear.
*474 Similarly, in Weissblum, plaintiff sought recovery from defendant insurance company under a liability policy for damage to 189 glass lights which had been broken during work performed by plaintiff in repairing windows and trim at Hunter College. Liability was denied on the ground that the damage to each glass light was a separate accident and the amount of such damage was less than the deductible amount provided in the policy. In determining that the damage to all the glass lights was the result of "one accident" the court stated:
The Court should look for such a construction as would form a harmonious plan for insurance of the nature contemplated by the parties (Guarisco v. Massachusetts Bonding & Insurance Co., 167 Misc. 875, 4 N.Y.S.2d 788; 258 App. Div. 889, 16 N.Y.S. 2d 208).
The word "accident" has been the subject of much judicial interpretation and was best defined in the case of Paul v. Travelers Insurance Co., 112 N.Y. 472, 20 N.E. 347, 349, 3 L.R.A. 443, as "the happening of an event without the aid and the design of the person, and which is unforeseen". In the more recent case of Arthur A. Johnson Corp. v. Indemnity Insurance Company of North America, 7 N.Y.2d 222, 196 N.Y.S.2d 678, it was held that the word "accident" is to be construed in the same way that the ordinary man on the street would construe it when purchasing and paying for insurance. While no authority has been called to our attention in this state in which the particular question involved in this lawsuit has been determined, the meaning of the words "each accident" as related to this type of policy of insurance was recently interpreted in the California decision of Haerens v. Commercial Casualty Ins. Co., 130 Cal. App.2d Supp. 892, 279 P.2d 211. There, on almost identical facts, the Court supported the view that damage to separate panes of glass in the course of work performed by a subcontractor engaged in a painting operation, did not place each damaged pane in the category of a "separate accident". The only other case of similar purport that has been brought to our attention by the briefs of learned counsel is Elston-Richards Storage Co. v. Indemnity Insurance Co., D.C., 194 F. Supp. 673, 674, affirmed 6 Cir., 291 F.2d 627. There, however, the Court, in construing the words of exception "arising from any one event or occurrence" found as a fact that over a period of nine months merchandise placed on a special truck had been "damaged from day to day and from time to time" thus eliminating the possibility that `one event' had caused the injury.

* * *
* * * It is my opinion that the parties intended to embrace within the scope of this policy property damage such as is described in the *475 complaint, and that the damaged lights were not created by 189 accidents as contended by the defendant so as to bring this claim within the exclusatory provisions of the policy.
We therefore conclude that, under the terms of the insurance policy issued by defendant to plaintiff, defendant is liable for the value of the damage to the carpeting in excess of the deductible amount of $250.
Inasmuch as there is no genuine issue as to any material fact involved, plaintiff is entitled to a judgment as a matter of law. The motion for summary judgment is granted.