167 N.J. Super. 398 (1979)
400 A.2d 1211
BURLINGTON COUNTY ABSTRACT COMPANY, PLAINTIFF-RESPONDENT,
v.
QMA ASSOCIATES, INC.; QMQ ASSOCIATES, INC.; EUGENE QUIRK, HUGO ARMANDO; AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 5, 1979.
Decided April 10, 1979.
*400 Before Judges FRITZ, BISCHOFF and MORGAN.
Messrs. Montano, Summers, Mullen & Manuel, attorneys for appellant St. Paul Fire and Marine Insurance Company (Mr. Alan P. Bruce on the brief).
Messrs. Schulze, Wood, Tapper & Dangel, attorneys for respondent (Mr. Robert M. Dangel on the brief).
The opinion of the court was delivered by MORGAN, J.A.D.
Defendant St. Paul Fire and Marine Insurance Company (St. Paul) appeals from summary judgment entered in favor of its insured, Burlington County Abstract Company (Burlington), based upon the finding that St. Paul was being asked to pay on account of one claim rather than upon many separate claims and that consequently the $500 deductible amount, provided for in the insurance policy issued by St. Paul to Burlington would apply only once as against that one claim instead of being applied to each separate claim.[1]
The pertinent facts appear undisputed. Burlington, the plaintiff and insured, is a title abstracting company which, as part of its business, undertakes to conduct real estate settlements. St. Paul insures it against liability for errors and omissions. Its policy committed St. Paul:
*401 To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay * * * on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured or any other person for whose acts the Insured is legally liable in the performance of professional services for others in the Insured's professional capacity as a title insurance agent * * *. [Emphasis supplied]
With respect to the $500 deductible amount, it was agreed that
* * * in the event of a claim the deductible amount shown in the Declarations shall be deducted from the total amount resulting from each claim, and the Company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. [Emphasis supplied]
The policy limits of liability were $100,000 with respect to each claim, that is, "liability for all damages arising out of all acts or omission in connection with the same professional service regardless of the number of claims or claimants," and $200,000 as to total limit of St. Paul's liability for all damages during each policy year.
Plaintiff's factual statement submitted in support of its motion for summary judgment disclosed that in early 1970 codefendant QMQ Associates, presently insolvent, owned a tract of land located in Edgewater Township, Burlington County, New Jersey. This tract was originally developed as an apartment complex and was taxed as a single parcel. Thereafter, however, QMQ converted the apartment complex to a group of condominiums slated for sale and individual ownership. It was in connection with the anticipated sales of these condominium units that QMQ contracted with Burlington to perform all title service work, including supervision of the settlements on the sales of the 84 condominium units. Plaintiff performed this undertaking during 1972 and 1973 when the 84 units were sold to different purchasers. At each of these settlements, certificates of occupancy were presented to the title clerk for the condominium being conveyed.
*402 Although QMQ was responsible for property taxes with respect to each unit accruing prior to the date title was transferred, and the purchaser was liable for taxes accruing thereafter, Burlington failed to ascertain the taxes due on the date of closing with respect to each condominium sold. In point of fact, there were past due taxes owing, later allocated to each unit with respect to the date title thereto was transferred, but those taxes were not collected from QMQ or reflected in the closing adjustments. Burlington admits its liability with respect to its failure to make individual searches, or even spot checks, so as to alert the purchasers to the past due taxes on the unit being purchased that were the liability of QMQ.[2] Accordingly, no escrow accounts were set up and no provision made by which QMQ's liability could be enforced. When the results of this dereliction were made known to Burlington, it paid those past due taxes, which totalled $15,821.30, the amount it now seeks from St. Paul less the $500 deductible.
St. Paul, however, refused to pay the amount sought, contending that the $500 deductible applied to each of the condominium owners' claims for taxes due for the period preceding their assumption of title. No individual claim, as St. Paul understood that term, exceeded the deductible amount and, accordingly, St. Paul was not obligated to pay Burlington anything.
The trial judge's ruling in Burlington's favor to the effect that only one claim was being made and that the deductible amount therefore applied only once as against that claim was based upon a number of considerations. First, he noted that the claim on the policy was being made by *403 Burlington and, as asserted, was clearly one claim. Second, relying upon the limitation of liability clause in the policy, which set forth the limits of St. Paul's liability with respect to any number of claims arising out of the same professional service, he concluded that all of the condominium owners' claims arose out of the same professional service and were accordingly to be regarded as one claim. Third, since the amount claimed by Burlington arose out of the same cause, failure to order tax searches, the resulting damage would be regarded as one claim.
The central issue is whether the amount Burlington is asking St. Paul to pay arises from one or many claims within the meaning of the policy. The term "claim" is not defined in the policy. It is nonetheless apparent from the policy itself that St. Paul recognized that the same professional service could spawn many claims. The limitation of liability clause on which the trial judge relied, evidenced recognition that such may be the case. It provided:
The Limit of Liability stated in the Declarations as applicable to "each claim" is the total limit of the Company's liability for all damages arising out of all acts or omissions in connection with the same professional service regardless of the number of claims or claimants. [Emphasis supplied]
Here, St. Paul is contending that the same service gave rise to many claims and claimants. That such has been the experience of many insurance companies is free from all doubt. See, e.g. Bacon v. Miller, 113 N.J. Super. 271 (App. Div. 1971).
It is not appropriate, therefore, to determine the number of "claims" by reference to the number of acts or omissions giving rise to them however closely such acts or omissions may be related to each other in terms of time or place. Indeed, the very same act or omission may and frequently does give rise to a large number of individual claims based thereon.
*404 A claim has been defined as "a challenging request, a demand of a right, a calling upon another for something due, a demand for benefits or payment, a privilege to something, a title to something in the possession of another * * *." Lamberton v. Travelers Indem. Co., 325 A.2d 104, 107 (Del. Super. Ct. 1974), aff'd 346 A.2d 167 (Del. Sup. Ct. 1975). Of necessity, it belongs to the person making the demand or asserting the right to benefits arising from some loss inflicted upon him. It should not be confused with the cause giving rise to the claim. One cause can, and frequently does, generate many claims.
That such was the meaning of the word as used in paragraph two of the policy, entitled "Coverage," is clear from its context. The fundamental basis for St. Paul's liability under the policy is "liability imposed by law or contract for damages on account of any claim made against the Insured * * *." Here, the word "claim" is being used in its ordinary significance to refer to a demand on the insured by a third party for damages caused by the insured's negligent act or omission. In the same paragraph, St. Paul reserves the right to investigate and settle "any claim or suit"; manifestly, the term "claim" is there being used as a demand prior to its being asserted in litigation. In the very next sentence, St. Paul agrees not to settle "any claim or suit" without the insured's written consent.
All the references in paragraph two clearly refer to the word "claim" as a demand for payment by a third party injured by the covered act of the insured. It is equally clear that in this paragraph, unlike in the paragraph relating to the limits of liability, it does not refer to all claims arising out of rendition of the same professional service, as Burlington contends it does.
Paragraph three describes the agreed deductible. That provision, too, refers to the word "claim." Hence, the deductible applies "in the event of a claim." The stipulated $500 deductible amount is to be deducted from the "total amount resulting from each claim." Nothing suggests that *405 by the mere addition of the word "each" before "claim" that the meaning previously attributed to the word "claim" alone in the paragraph regarding coverage underwent the dramatic change of meaning attributed to that phrase by the insured.
In support of its contention that "each claim" in the deductible clause refers to several claims arising out of the rendition of the same professional service, Burlington takes the definition accorded that phrase in the provision in paragraph six, entitled "Limit of Liability," quoted above. To limit its monetary liability, in that paragraph the insurance company chose to rely upon the origin of one or many claims instead of the number of claims asserted. By doing so, it achieved a lower limit on its exposure than it would have achieved by relying upon the number of claims or claimants. Clearly, two or three claims resulting from the performance of the same professional service might exceed the $100,000; hence, the formulation of the limitation by reference to the service rendered rather than to the mere number of claims spawned was designed to limit the amount of liability to which it would otherwise have been exposed. Nothing in that paragraph, however, suggests that the phrase "each claim," which appears in the "Declarations" opposite the monetary limit of liability for "each claim" and defined in the paragraph describing those limits, be used elsewhere in the policy in the same sense.
Nor was the trial judge's reliance upon Wilkinson v. Providence Washington Ins. Co., 124 N.J. Super. 466 (Law Div. 1973), appropriate. In that case plaintiff-insured was a building contractor who was removing tiles in a new and unrented apartment building, a job which was performed over a period of one or possibly two working days. In the process one of the insured's employees damaged carpeting in each of the building's 34 apartments. The insurance carrier contended that the damage in each of the apartments was a separate occurrence, thus bringing into play a $250 deductible clause in the policy applicable to each occurrence. *406 The insured, on the other hand, contended that the damage was a single occurrence causing only one application of the deductible amount. The court ruled in the insured's favor, concluding that the property damage was the result of one occurrence. It did so on the factual basis that "[t]he acts imposing liability upon plaintiff were committed by one of its employees in the performance of a single and continuous operation completed within the course of one, or two, working days." 124 N.J. Super. at 472. That case, however, is of little value in resolving the present one because, in Wilkinson, there was no question but that the property damaged belonged to one claimant, the apartment houseowner. The apartment house, being new, had not yet been rented and the carpeting had not yet become either the property of a tenant or part of a tenant's leasehold interest. There was, in Wilkinson, only one claim, only one claimant, and there could have been only one judgment. The issue being decided was whether that claim arose out of one or more occurrences. The result reached was clearly a correct one although it was unaccountably based upon its view of an "occurrence" rather than a "claim" despite the fact that the deductible in the policy was based upon "a claim."
Here, however, plaintiff's negligence resulted in loss to 84 separate purchasers of condominium units. It appears that in order to protect their property, they were required to pay taxes which accrued before they assumed title. See N.J.S.A. 46:8B-19.[3] Each owner had his own claim, and this despite the similarity in the omission which resulted in their damage. *407 Had each sued Burlington, each could have recovered a judgment. Wilkinson, of course, is further distinguished by the fact that there the negligent acts occurred within a brief two-day period, while here they occurred over the course of 12 months.
More useful in resolution of the projected issue is Lamberton v. Travelers Indem. Co., supra, a case involving an Architect's and Engineer's Professional Liability Policy which provided errors and omissions coverage to a partnership of consulting engineers who were involved in the design and construction of the Second Delaware Memorial Bridge. The policy carried a $10,000 deductible amount to be applied to "each claim." During construction a wooden form collapsed, causing either death or injury to several workmen in the area. Nine suits were filed against the insured engineers, and Travelers demanded that the insured pay the $10,000 deductible amount as to each of those claims. The insured, like Burlington here, argued that it was required to pay the deductible only once. After defining the term "claim" as connoting the assertion of a right, the court made the distinction, relevant here, between a claim and the event which gives rise to it. It said:
It is difficult to conceive of the word claim being used to describe an incident or event which causes trauma and resulting injury, absent some additional language forming a base upon which that interpretation can rest. It is the collapsing of the form which caused injury and which gave birth to certain claims of those injured  in no sense can the collapsing of the forms be called a claim. [325 A.2d at 107; emphasis supplied]
Accordingly, the court concluded that the deductible provision applied to each of the injured parties' claims, a decision affirmed on appeal. In Lamberton the claims were held to belong to the parties injured although each was injured by the same occurrence caused by the same negligent act. So here, the failure to order tax searches cannot be regarded as the claim but rather the cause thereof. The injured *408 parties are those condominium owners forced, in the protection of their property, to pay taxes properly the responsibility of the seller. Each such owner had his own claim; none could assert the claim of another. There were 84 such claims, for all of which liability was admitted by Burlington. See also, Elston-Richards Storage Co. v. Indemnity Ins. Co., 194 F. Supp. 673 (W.D. Mich. 1960), aff'd o.b. 291 F.2d 627 (6 Cir.1961); Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co., 447 F.2d 204 (5 Cir.1971). Moreover, had QMQ, the developer, recognized its liability for taxes accruing prior to transfer of title and had it then been in a financial position to pay each property owner the amount due each, it could not have then asserted a successful claim against Burlington, as a single claim, for which St. Paul would have been liable because QMQ could not have claimed damage as a result of Burlington's failure to order tax searches. It would merely have been paying what it was obliged to pay, in any event. Hence, the result we reach is not merely a function of the form in which the claims were asserted but rather of the fact that 84 separate claims by 84 different owners separately damaged by Burlington's several negligent omissions were being asserted.
Moreover, even assuming arguendo that "each claim" under St. Paul's policy refers to all claims resulting from the rendition of the same professional service regardless of the number of claims or claimants, as appellant argues, we nonetheless find ourselves in disagreement with the trial judge's view that plaintiff's supervision of 84 separate title closings over a prolonged period of time constituted the same professional service. Although it is true that plaintiff undertook this service by contract with QMQ and could, therefore, be said to be performing its singular contractually-derived duty to the developer seller, its position, vis-a-vis each condominium purchaser must be viewed differently. To each such owner plaintiff owed a separate obligation with respect to title and the necessary tax searches. Each such owner relied upon plaintiff's performance of that obligation and *409 each was damaged by plaintiff's failure to perform. The adjustments with respect to each purchaser were different and the 84 closings took place over a 12-month period of time. Although it appears that plaintiff was neglectful with respect to all, it need not have been. It could well have ordered tax searches for some, if not all. Or the derelictions with respect to some may have been as to taxes and with respect to others some other kind of deficiently rendered performance resulting in damage. Similarity in the nature of the omission or because the occasion for the occurrence derived from one contract cannot convert the several omissions into one claim.
Finally, it is of no moment that St. Paul was confronted with only a single claim filed by Burlington. St. Paul's policy was not first-party insurance but rather evidenced St. Paul's undertaking to protect Burlington against liability imposed upon it as a result of a claim by a third party. Several claims by third parties cannot be converted into a single claim by the mere expedient of paying them. The factual basis underlying any liability owed by St. Paul to Burlington by virtue of this policy is the claim of a third party, here a condominum owner, asserted against Burlington.
In summary, Burlington's omissions were many, committed over a two-year period of time, damaging 84 different owners each of whom had his own claim for damage. The policy clearly mandates application of the $500 deductible amount to each claim asserted regardless of whether such claims arose from the same or different professional services.
The summary judgment in plaintiff's favor is reversed and the matter remanded to the trial court for any further proceedings required to resolve all issues. By reason of our holding, it becomes unnecessary for us to consider appellant's contention concerning the allowance of legal fees.
NOTES
[1] Although a notice of appeal was filed from what was characterized as a final judgment, this appeal nonetheless appears to be interlocutory as there exist claims unresolved by the challenged summary judgment. We have nonetheless elected to decide this appeal notwithstanding its interlocutory nature, because of the central role played by this judgment in the disposition of the other claims.
[2] According to the stipulated facts, separate assessments for each unit were provided only after the sale of these units were consummated and hence separate tax searches could not have been obtained for the individual units sold at the time of closing. Nonetheless, plaintiff admitted that "as a matter of good practice, spot searches should have been ordered * * *."
[3] All property taxes, special assessments and other charges imposed by any taxing authority shall be separately assessed against and collected on each unit as a single parcel, and not on the condominium property as a whole. Such taxes, assessments and charges shall constitute a lien only upon the unit and upon no other portion of the condominium property. All laws authorizing exemptions from taxation or deductions from tax bills shall be applicable to each individual unit to the same extent they are applicable to other separate property. [Emphasis supplied]