9 A.3d 1095 (2011)
417 N.J. Super. 393
NEW JERSEY MANUFACTURERS INSURANCE GROUP/GARRISON LANGE, Plaintiff-Respondent,
v.
HOLGER TRUCKING CORPORATION and ARI Insurance Companies, Defendants-Appellants.
No. A-0365-09T3.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 2010.
Decided January 7, 2011.
William S. Bloom, Edison, argued the cause for appellants (Methfessel & Werbel, attorneys; Mr. Bloom, on the brief).
William H. Hanifen, IV, Collingswood, argued the cause for respondent.
Before Judges FISHER, SAPP-PETERSON and SIMONELLI.
The opinion of the court was delivered by
FISHER, J.A.D.
N.J.S.A. 39:6A-9.1 requires that an insurer, which has provided personal injury protection (PIP) benefits, must commence suit for reimbursement from a tortfeasor within two years of "the filing of the claim." The parties dispute whether the claim is filed when an insured or health care provider first requests reimbursement for PIP benefits or when the insured *1096 submits a claim form requested by the insurera determination critical to the survival of this action. After closely examining this difficult issue, we conclude the Legislature most likely intended that the "claim" is "filed" when the latter event occurs.
The facts are not in dispute. Garrison Lange was injured in an automobile accident in Sayreville on December 1, 2006, when his vehicle was struck by a vehicle owned by Holger Trucking Company and driven by a Holger employee. That day, Lange contacted his automobile insurer, plaintiff New Jersey Manufacturers Insurance Group (NJM), advising of the accident and claiming he had sustained neck and back injuries. On that same day, NJM created a file for Lange's PIP claim and assigned it a file number.
On December 4, 2006, Michael Feher, an NJM adjuster, mailed Lange a PIP application to be completed and returned. That same day, Lange was first treated by Dr. Edward Palluzzi, a chiropractor. On December 6, 2006, Dr. Palluzzi submitted medical bills to NJM for treatment rendered on December 4 and 5, 2006. NJM received Dr. Palluzzi's bills on December 8, 2006.
On December 8, 2006, Dr. Palluzzi sent NJM a letter of medical necessity, which referenced the file number NJM had assigned to Lange's PIP file, asserting that Lange's right and left shoulders required adjustment. Dr. Palluzzi requested NJM's approval of a one-month treatment plan, which was authorized by Feher on December 11, 2006. Dr. Palluzzi forwarded additional bills for treatment rendered on December 8 and 11, 2006, which were received by NJM on December 20, 2006.
On December 20, 2006, as requested, Lange sent NJM a completed PIP application, which NJM received on December 26, 2006.
On December 24, 2008, NJM filed its complaint in this action against Holger and its insurer, ARI Insurance Companies, seeking reimbursement of $53,323.29 in PIP benefits NJM paid on Lange's behalf. Because NJM's suit was filed more than two years after Lange first advised NJM of the accident and more than two years after NJM opened a file, assigned it a number, received medical bills and treatment plans regarding Lange's treatment, and approved Lange's treatment plan, Holger and ARI (defendants) moved for summary judgment based on N.J.S.A. 39:6A-9.1, which states in pertinent part:
An insurer ... paying [PIP] benefits... or medical expense benefits ... as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain [PIP] protection or medical expense benefits coverage at the time of the accident.
[Emphasis added.]
NJM countered that the suit was timely filed because it did not receive Lange's formal PIP application until December 26, 2006, slightly less than two years before the filing of this suit. The trial judge agreed with NJM's proposed construction of the statute and denied defendants' motion. We affirm.
N.J.S.A. 39:6A-9.1 does not expressly define what is meant by "the claim" as used in this context. We have in the past broadly defined "claim" as "`a challenging request, a demand of a right, a calling upon another for something due, a demand for benefits or payment, a privilege to something, a title to something in the possession of another....'" Burlington Cnty. Abstract Co. v. QMA Assocs., *1097 167 N.J.Super. 398, 404, 400 A.2d 1211 (App.Div.) (quoting Lamberton v. Travelers Indem. Co., 325 A.2d 104, 107 (Del.Super.Ct.1974), aff'd, 346 A.2d 167 (Del. 1975)), certif. denied, 81 N.J. 280, 405 A.2d 824 (1979). The statutory framework for the rendering of PIP benefits, however, fully recognizes that an insured or health care provider may provide many such claims, and, as a result, there is significant uncertainty about which of the many demands for payment that might be submitted in a given caseor were submitted hereconstitutes "the" claim that commenced the limitation period prescribed by N.J.S.A. 39:6A-9.1. For example, Dr. Palluzzi's various bills may be viewed as "claims," because they were submitted with the intent that NJM provide payment within the brief time frame contained in N.J.S.A. 39:6A-5(g). In addition, NJM requested Lange's submission of a completed PIP claim form, which might also be viewed as "the claim" referred to in N.J.S.A. 39:6A-9.1. Accordingly, in casting about the many demands that may be asserted in this setting for "the claim" that the Legislature referred to in N.J.S.A. 39:6A-9.1, we must resort to the familiar guidelines of statutory construction.
In interpreting a statute, we generally look to the particular wording of the statute, see, e.g., Germann v. Matriss, 55 N.J. 193, 220, 260 A.2d 825 (1970) (recognizing that "the meaning of words may be indicated and controlled by those with which they are associated"), as well as the overall sense and purpose of the statute, see, e.g., Lesniak v. Budzash, 133 N.J. 1, 8, 626 A.2d 1073 (1993) (holding that courts should consider the "legislative policy underlying the statute and any history which may be of aid"). These factors should also be considered in conjunction so that "a literal interpretation of individual statutory terms or provisions" is not permitted to override "the overall purpose of the statute." State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch., 146 N.J. 1, 5, 679 A.2d 620 (1996) (quoting Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995)). We are thus required to carefully examine the words chosen by the Legislature in expressing its intent as well as the overall purpose of N.J.S.A. 39:6A-9.1 and its neighboring and related provisions.
In looking first to the words of the statute and the critical phrase, we focus initially on the Legislature's use of the definite article. That is, in giving the words in the statute their common meaning, Darel v. Pennsylvania Mfrs. Assoc. Ins. Co., 114 N.J. 416, 425, 555 A.2d 570 (1989); N.J.S.A. 1:1-1, the Legislature's reference to the submission of "the claim" as the event triggering the running of the statute of limitations was likely intended to mean a single, definite event and not any one of a series of events. N.J.S.A. 39:6A-9.1 (emphasis added).[1] We reach this conclusion not only because the phrasing of the statute strongly suggests a single, definite submission to the insurer as the triggering event, but also because the very nature of the undertakingthe fixing of *1098 the moment upon which the limitations period begins to runsuggests a need to provide the parties with a clear and unambiguous understanding of which of any number of occurrences is the triggering event. With that goal in mind, we are satisfied the Legislature intended to fix a single circumstance as the triggering event. Accordingly, we place significant emphasis on the fact that the Legislature described that event as the filing of "the claim" and not "a claim."
Concluding that "the claim" refers to a single event and not any one of an array of possible events, however, only partially narrows the focus. That is, the Legislature's use of the definite article undoubtedly was intended to describe one event clearly distinguishable from all others. But it does not provide enlightenment as to whether that singular claim was meant to be the first claim, the last claim, or the claim that is different from all others, namely, the insured's PIP application.
Having narrowed the field of possibilities, we reject the last request for payment from a health care provider as "the claim" referred to in N.J.S.A. 39:6A-9.1. What might be the last request for payment may not always be obvious to the parties until there is a considerable passage of time from its submission. For example, an insurer could receive a series of requests for payment over the course of a few months ending on January 5, 2008. With an interval of a few weeks during which no request was submitted, the insurer might be led to assume that the two-year period began running on January 5, 2008. Many weeks or months later, however, another request for payment might be received, causing the insurer to readjust its view of the deadline for filing suit. In that fashion, the two-year limitations period will become a moving target until such time as the insured or his or her health care providers eventually stop making requests for payment. Because of the impracticalities and uncertainty associated with such an approach, we reject as unlikely that the Legislature intended "the claim" to be "the last demand for payment."
The first request for payment seems more logical because it would tend to compel the early filing of suits for reimbursement. The Legislature's choice of that event would best serve the goals underlying all statutes of limitationsproviding defendants with "a fair opportunity to defend" and "prevent[ing] plaintiffs from litigating stale claims," Price v. N.J. Mfrs. Ins. Co., 182 N.J. 519, 524, 867 A.2d 1181 (2005) (quoting W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 563, 562 A.2d 222 (1989))by requiring the insurer to commence its reimbursement suit sooner than it would if the last request for payment was chosen as the trigger point. But interpreting "the claim" as the equivalent of the insured's first request for PIP benefits generates uncertainty. For example, in this case the first claim could logically be construed as the insured's initial telephone call to the insurer to advise of the accident or it could be construed as Dr. Palluzzi's first request for payment of a bill. Although here those two events occurred only two days apart, other problematic scenarios can be envisioned.
We think it unlikely that the Legislature intended to leave parties in the dark as to the commencement of the limitations period by choosing an uncertain triggering event. Instead, the Legislature likely had some other event in mind when it referred to "the claim" in N.J.S.A. 39:6A-9.1. Our focus on the definite article in the phrase "the claim" in N.J.S.A. 39:6A-9.1 was helpful in recognizing the Legislature's intent to fix one particular, distinguishable event as the trigger for the limitations period. Yet our consideration of the word "claim" *1099 as used in the statutory scheme, as well as the purposes of the no-fault laws, compels our conclusion that it is the submission of the PIP claim form that triggers the two-year limitations period contained in N.J.S.A. 39:6A-9.1.
As we have noted, in other circumstances we have viewed the word "claim" broadly as including any assertion of a right or demand for payment. Burlington Cnty. Abstract Co., supra, 167 N.J.Super. at 404, 400 A.2d 1211. Viewed broadly, practically everything submitted by either the insured or his health care providers to NJM constituted a "claim." However, as we have explained, utilization of such a broad definition would generate undue uncertainty regarding the application of the statute of limitations in most any given case. Logic suggests that the Legislature intended one particular, clearly distinguishable event to trigger the statute of limitations.
In seeking what the Legislature intended, we find it significant that, in declaring the parties' obligations upon the submission to an insurer of a demand for payment, the Legislature did not always refer to those submissions as "claims." Instead, N.J.S.A. 39:6A-5(a) directs that "written notice shall be provided to the insurer by the treating health care provider no later than 21 days following the commencement of treatment" (emphasis added),[2] and N.J.S.A. 39:6A-5(b) speaks in terms of an insured or health care provider giving "written notice" or "notification" of a "bill or invoice to the insurer for reimbursement of services within 21 days of the commencement of treatment." We glean from the manner in which these demands were labeled in other related provisions that the Legislature likely contemplated something other than a routine submission of a bill as "the claim" mentioned in N.J.S.A. 39:6A-9.1.
This assumption of the legislative intent from the words of the statute and neighboring provisions is reached with no great abundance of certainty. We are concerned by the factas the parties recognizethat the policy in question and perhaps others like it do not require that an insured ever submit a PIP claim form; nor do the no-fault *1100 laws compel such a "filing." As a result, the event we have assumed to be the triggering event for the time within which a reimbursement suit must be commenced may be something that, in many cases, may never occur. However, because nothing else would sensibly constitute a logical event for the commencement of the limitation period, we conclude that "the claim" referred to in N.J.S.A. 39:6A-9.1 is the submission of the claim form or application requested by the insurer. It is only this submission that provides in a single document: the nature of the accident and the injuries claimed; an identification of the health care provider and his contact information; information about other automobiles garaged at the insured's household; whether the insured is employed; and whether the accident occurred while the insured was in the course of his employment. The claim form also called for the insured's signature, thus providing greater formality to the parties' undertaking. Such a document better conforms to what it means to be a "claim" and its submission constitutes an event that provides clarity and predictability to the commencement of the limitations period.
In addition, our conclusion as to the likely meaning of N.J.S.A. 39:6A-9.1 is suggested by the Legislature's goal in enacting and periodically amending the no-fault laws, which has been to reduce insurance costs for New Jersey residents. David v. Gov't Emp. Ins. Co., 360 N.J.Super. 127, 134-35, 821 A.2d 564 (App.Div.), certif. denied, 178 N.J. 251, 837 A.2d 1094 (2003). To that end, the various provisions of the no-fault laws, including N.J.S.A. 39:6A-9.1, are liberally construed. Washington v. Mkt. Transition Facility, 295 N.J.Super. 368, 372, 685 A.2d 57 (App.Div. 1996). As a result, N.J.S.A. 39:6A-9.1 is to be read "broadly so as to encompass all potentially liable tortfeasors, consistent with the legislative objective of reducing insurance premiums" for vehicle owners. David, supra, 360 N.J.Super. at 135, 821 A.2d 564. Reimbursement "advances stability in the insurance marketplace by requiring that the ultimate cost of PIP benefits be borne by the insurer of the responsible party, not by the insurer of the victim." Fernandez v. Nationwide Mut. Fire Ins. Co., 199 N.J. 591, 593, 974 A.2d 1031 (2009). Accordingly, adoption of a later moment in timethe submission of the claim form provides additional time for "the insurer of the victim" to seek reimbursement from "the insurer of the responsible party" and, thus, better serves the goals of the no-fault laws.
As can be seen, our resolution of this novel issue is based largely on an interpretation of the wording and general sense of the statute, as well as its overall goals. To be sure, the possible triggering events we have rejected represent plausible interpretations of the statute, and we take comfort in knowing that the Legislature is fully capable of correcting the statute's ambiguity if it believes we have erroneously interpreted the statute. See LaFage v. Jani, 166 N.J. 412, 430, 766 A.2d 1066 (2001).
Affirmed.
NOTES
[1] Common usage might suggest that the word "claim" preceded by "a" restricts application to a single object or subject; however, the "usual presumption in favor of [that] natural application appears to be reversed" in matters of statutory interpretation. 2A Norman Singer, Sutherland Statutory Construction § 47:34 at 377 (2d ed. 2010). That is, most courts have ruled "that a term introduced by `a' or `an' applies to multiple subjects or objects unless there is reason to find that singular application was intended or is reasonably understood." Ibid. Application of this general guideline would suggest that an insurer could timely commence a reimbursement suit within two years of any claiman outcome we believe unlikely.
[2] The entire relevant text of N.J.S.A. 39:6A-5(a), quoted below, demonstrates that the various notifications of treatment provided by the insured and Dr. Palluzzi are different than "the claim" that triggers the limitation period:

In the case of claims for medical expense benefits under [standard, basic or special automobile insurance] policies [required by N.J.S.A. 39:6A-4, N.J.S.A. 39:6A-3.1, or N.J.S.A. 39:6A-3.3], written notice shall be provided to the insurer by the treating health care provider no later than 21 days following the commencement of treatment. Notification required under this section shall be made in accordance with the regulations adopted by the Commissioner of Banking and Insurance and on a form prescribed by the Commissioner of Banking and Insurance. Within a reasonable time after receiving notification required pursuant to this act, the insurer shall confirm to the treating health care provider that its policy affords the claimant personal injury protection coverage benefits ..., medical expense benefits ..., or emergent care medical expense benefits....
[Emphasis added.]
We recognize that not every provision of these statutes reflects this distinction between "notifications" and "claims." See, e.g., N.J.S.A. 39:6A-5(d) (providing for a health care provider's right to request a superior court judge to permit a provider "to refile" a "claim" when the provider "fails to notify the insurer within 21 days and whose claim for payment has been denied"). However, the sense derived from all the subsections of N.J.S.A. 39:6A-5 is that the many bills for payment that may be served on the insurer in a given case are only portions of what the Legislature viewed as an insured's "claim" for PIP benefits.