210 N.J. Super. 67 (1986)
509 A.2d 220
ANDREW DORIA, A MINOR AND MICHAEL DORIA, A MINOR, BY THEIR FATHER AND GUARDIAN AD LITEM, ROGER DORIA, ROGER DORIA, INDIVIDUALLY AND IN HIS OWN RIGHT, AND LAURA DORIA, INDIVIDUALLY AND IN HER OWN RIGHT, PLAINTIFFS-APPELLANTS,
v.
THE INSURANCE COMPANY OF NORTH AMERICA, DEFENDANT-RESPONDENT, AND RICHARD ORLINA AND ANTONIO MACINA, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 7, 1986.
Decided April 30, 1986.
*68 Before Judges MORTON I. GREENBERG, LONG and HAVEY.
Robert A. Porter argued the cause for appellants (Nathan A. Friedman, attorney; Robert A. Porter on the brief).
*69 F. Herbert Owens, III, argued the cause for respondent (Montano, Summers, Mullen, Manuel & Owens, P.C., attorneys; F. Herbert Owens on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
This is a declaratory judgment action involving the interpretation of the term "occurrence" as defined under a general liability insurance policy. The issue raised by this appeal is whether the injuries sustained by the two minor plaintiffs after one fell into a swimming pool and the second fell into the pool attempting to rescue the first, were caused by one or two occurrences. We hold that the number of occurrences for the purpose of applying coverage limitations is determined by referring to the cause or causes of injury and not the number of injuries or claims. We further hold that when injuries to two or more persons, resulting from the same cause, are so closely linked in time and space as to be deemed by the average person as a single event, there is but one occurrence. We conclude that in the circumstances presented here, the injuries to plaintiffs were caused by a single occurrence. We accordingly affirm the trial court's order of summary judgment in favor of defendant Insurance Company of North America (INA).
The essential facts are not in dispute. Plaintiffs Andrew and Michael Doria, brothers and at the time five and four years old respectively, entered property owned by defendants Richard Orlina and Antonio Macina through a broken and dilapidated fence which enclosed a 15' x 40' in-ground swimming pool. The pool had not been used for four to six years and had been left in a state of disrepair. It was uncovered and water had accumulated in it. The water was black and covered with a thick layer of leaves. While the boys were playing near the pool, Michael fell in. Andrew immediately leaned into the pool attempting to hand a stick to his brother to grab and fell in as well. Their companion, Jeffrey Brill, ran home to get help and *70 returned with his mother who pulled Andrew and Michael from the water. Both boys were unconscious and spent an extended period of time in the hospital. Both survived but their present condition is not apparent from the record.
INA issued a homeowners' liability policy to Orlina and Macina which provided for a maximum personal liability coverage in the amount of $100,000. The policy provided that the company would pay on behalf of the insured "sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence." The policy defined "occurrence" as "an accident, including injurious exposure to conditions which results, during the policy term, in bodily injury or property damage." The policy further provided:
Regardless of the number of:
1. insureds under this insurance;
2. persons or organizations who sustain bodily injury or property damage; or
3. claims made or suits brought on account of bodily injury or property damage; this Company's liability is limited as follows:
1. Coverage E, Personal Liability: The limit of liability stated in the Declarations as applicable to "each occurrence" is the total limit of the Company's liability under Coverage E, Personal Liability, for all damages as the result of any one occurrence.
Plaintiff Roger Doria, individually and on behalf of his sons Michael and Andrew, instituted an action against Orlina and Macina seeking damages for the injuries sustained by Michael and Andrew as well as for medical costs associated with their treatment. A settlement was reached under the terms of which INA paid $90,000, with Orlina and Macina contributing $15,000 from their personal funds. From the aggregate $105,000 settlement, the sums of $67,112.59 and $10,862.58 were paid to Roger on behalf of Andrew and Michael respectively and $27,024.83 to Roger individually. The settlement provided that plaintiffs reserved the right to institute a declaratory judgment action against INA seeking judicial interpretation of the term "occurrence" as defined by the policy. It was agreed that if *71 plaintiffs prevailed in their view that the injuries were caused by two occurrences, INA would contribute an additional $10,000 and $22,500 to the settlements of Andrew and Michael respectively. While the settlement order is somewhat unclear, it appears that if the additional contribution by INA is made, the $15,000 paid by Orlina and Macina individually would be reimbursed to them.
Following the settlement, plaintiffs instituted this declaratory judgment action. Plaintiffs and INA filed cross-motions for summary judgment. In granting INA's motion the trial court concluded that "... under the factual situation in this matter ... there is no possible way that ... there was more than one occurrence ... at the time and place in question."
Plaintiffs contend that the definition of "occurrence" under the policy is "ambiguous and non-specific" and therefore should be construed in a light most favorable to the insured. They argue that a fair reading of the definition supports their view that Michael's fall into the swimming pool and subsequent rescue attempt by Andrew constituted separate "occurrences." They urge that we should look to the effect of the accident, or the number of resulting claims, rather than the cause of the accident.
We begin with reference to the applicable provisions of the policy. In construing the terms of a policy of insurance, our function is to discern the probable intent of the parties "... in an effort to find a reasonable meaning in keeping with the express general purposes thereof." Kopp v. Newark Ins. Co., 204 N.J. Super. 415, 420 (App.Div. 1985). The policy must be interpreted to recognize the reasonable expectations of the insured to the end that coverage is afforded to the full extent that a fair construction of the policy will allow. See Zuckerman v. Nat. Union Fire Ins., 100 N.J. 304, 320-321 (1985); Great American Ins. v. Lerman Motors, Inc., 200 N.J. Super. 321, 326 (Law.Div. 1984), aff'd o.b. 200 N.J. Super. 319 (App.Div. 1984). Ambiguities in the policy language are to be resolved in *72 favor of the insured. See Sparks v. St. Paul Ins. Co., 100 N.J. 325, 336 (1985). The "doctrine of ambiguity" is applied, however, only "... `where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" American White Cross v. Continental Ins. Co., 202 N.J. Super. 372, 381 (App.Div. 1985), quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979).
In our view the provisions before us are clear and unambiguous. INA agreed to indemnify against claims for bodily injury "caused by an occurrence." The policy expressly limited liability to that amount stated in the declaration as applicable to each occurrence ($100,000) "[r]egardless of the number of ... persons ... who sustain bodily injury ... or ... claims made or suits brought on account of bodily injury...." "Occurrence" is defined as an "accident ... which results ... in bodily injury...." "Accident" is not defined in the policy. According to generally accepted definitions, an "accident" is a sudden and fortuitous event, unexpected by the person to whom it happens. See Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 526 (1963); Lansco, Inc. v. Dept. of Environmental Protection, 138 N.J. Super. 275, 282 (Ch.Div. 1975), aff'd o.b. 145 N.J. Super. 433 (App.Div. 1976); Black's Law Dictionary 14 (5th ed. 1979).
It is clear to us that the policy terms make the "occurrence" logically distinct from the injuries or claims which later take place. See Michigan Chemical Corp. v. American Home Assur. Co., 728 F.2d 374, 382 (6 Cir.1984). The use of the term "occurrence" clearly focuses on the underlying circumstances of the event which gave rise to the claim of injuries rather than on the injury itself. See Champion Intern. Corp. v. Continental Cas. Co., 546 F.2d 502, 505-506 (2 Cir.1976), cert. den. 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). Stated differently, although an injury must be suffered before coverage is afforded, see Muller Fuel Oil Co. v. Ins. Co. of No. Amer., 95 N.J. Super. 564, 578-579 (App.Div. 1967), for the purpose of counting the number of occurrences, the term must be construed from the point of view of the cause or causes of the *73 accident rather than its effect. In that respect an "occurrence" policy is entirely distinguishable from the "claims" policy which bases coverage on the number of the separate claims rather than the underlying cause or causes of the accident which produced the claims. See Burlington Cty. Abstract Co. v. QMA Associates, 167 N.J. Super. 398, 403 (App.Div. 1979), certif. den. 81 N.J. 280 (1979).
Plaintiffs rely upon the following language from Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18 (1984) in contending that New Jersey courts look to the "effects" of an accident in deciding what constitutes an occurrence:
As a general rule the time of the "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. [Id. at 27, quoting from Muller Fuel Oil Co. v. Ins. Co. of No. Amer., supra, 95 N.J. Super. at 578].
See also Meeker v. National Union Fire Ins. Co., 208 N.J. Super. 354, 357-358 (App.Div. 1986). Plaintiffs' reliance on Hartford is entirely misplaced since Hartford involved the question of when an occurrence triggers coverage, not how many occurrences have taken place. Specifically the question there was whether bodily injury occurred during the policy period, a predicate to coverage under a general liability "occurrence" policy. Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., supra, 98 N.J. at 28. The court clearly did not address the question of whether plaintiff's injuries were caused by a single or multiple occurrence.
We have found only one case in New Jersey involving the construction of the term "occurrence" under a general liability policy in the context before us. See Wilkinson v. Providence Washington Ins. Co., 124 N.J. Super. 466 (Law Div. 1973). The court in Wilkinson and a vast majority of courts in other jurisdictions have expressed the view that the "occurrence" or "accident" clause of a liability policy is to be construed by reference to the cause or causes of the injury or *74 damage rather than the number of claims. See Annotation, 55 A.L.R.2d 1300, 1303 (1957); 15A Couch on Insurance, § 56.21 (2 ed 1983); Michigan Chemical Corp. v. American Home Assur. Co., supra, 728 F.2d at 379 (each shipment of contaminated livestock feed rather than each resulting injury constituted "occurrences"); Champion Intern. Corp. v. Continental Cas. Co., supra, 546 F.2d at 505-506 (sale of defective vinyl panels installed on 1400 motor homes and trailers constituted single occurrence); Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3 Cir.1982) (claims of sex discrimination arising out of employer's adoption of employment rules constituted single occurrence); see also Business Interiors, Inc. v. Aetna Cas. & Sur. Co., 751 F.2d 361 (10 Cir.1984); Travelers Indem. Co. v. New England Box Co., 102 N.H. 380, 157 A.2d 765 (Sup.Ct. 1960).
A second view has evolved which focuses on the effect of an accident rather than its cause, where the injuries are separated in time and space. See Annotation, supra, 55 A.L.R.2d at 1309. For example, in Anchor Casualty Co. v. McCaleb, 178 F.2d 322, 324 (5 Cir.1949) the court held that separate "accidents" occurred when several properties were damaged after one oil well erupted over a two-day period. See also Liberty Mut. Ins. Co. v. Rawls, 404 F.2d 880 (5 Cir.1969).
The annotation at 55 A.L.R.2d 1300 suggests a reconciliation of these divergent views by examining the closeness of connection in time and space between the cause and result:
If cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event, the courts have invariably found that a single accident within the meaning of the accident clause of the policy has occurred, while if enough time has elapsed between the injuries or damages to the various items involved or if the latter are widely separated in space, the courts have been inclined to allow separate claims even though they sprang from the same cause. [Id. at 1304].
Implicit in this posited reconciliation is the suggestion that the longer the time interval and separation in space between the events resulting in the injuries, the weaker the proximate cause concept and the easier the finding of intervening *75 causes. See ibid; but see Appalachian Ins. Co. v. Liberty Mut. Ins. Co., supra, 676 F.2d at 61. What is clear from the case law is that a factual "time and space" analysis must be made on a case by case basis. For example, in Anchor Casualty Co. v. McCaleb, supra, 178 F.2d at 324, the court noted that the numerous accidents were the product of a series of eruptions from the oil well which continued "intermittently" over two days, affected by "the wind as a supervening force." In Liberty Mut. Ins. Co. v. Rawls, supra, 404 F.2d at 880, the court found separate "accidents" under an automobile liability policy where the insured's vehicle collided with two separate vehicles, since the insured had assumed control of his vehicle after the initial collision. However, citing the A.L.R.2d Annotation, we held in Bacon v. Miller, 113 N.J. Super. 271 (App.Div. 1971) that where two automobiles collided and one lost control and continued onto the abutting sidewalk striking three pedestrians, there was but one accident for purposes of recovery under the Unsatisfied Claim and Judgment Fund, N.J.S.A. 39:6-69 and 39:6-73, since the two collisions occurred while defendant's vehicle continued in an "uninterrupted course" and the entire event "could hardly have involved more than two seconds or covered a space of more than 18-25 feet." Id. at 276-277.
Considering the underlying circumstances present here, we are entirely satisfied that there was but one "occurrence" within the meaning of INA's policy. Firstly, the injuries to both Andrew and Michael resulted from a single cause: the insureds' failure to properly fence in and cover the abandoned pool. Secondly, the injuries' temporal and spatial connection compels us to conclude that they resulted from a single occurrence. The boys entered the premises together through the dilapidated fence and became exposed to the uncovered pool precisely at the same time. There was absolutely no change in the dangerous quality of the pool during the intervening seconds between their respective falls into the pool. Andrew's fall was precipitated by his immediate attempt to rescue his brother. *76 Essentially, the injuries to both boys occurred simultaneously while they were submerged in the pool water. Both were rescued at the same time. Their falls and respective injuries occurred during a single, brief sequence of events "... so closely linked in time and space as to be considered by the average person as one event...." Annotation, supra, 55 A.L.R.2d at 1304. Thus, INA's duty to indemnify was limited to the maximum coverage ($100,000) for a single "occurrence".
The order of summary judgment is affirmed.