### OMNE SERVICES GROUP, INC.

v.

### HARTFORD INSURANCE CO.

No. 97–3764.

United States District Court,
E.D. Pennsylvania.

May 4, 1998.

Ralph A. Jacobs, Hoyle, Jorris & Kerr, Philadelphia, PA, Bruce L. Phillips, Venzie, Phillips & Warshawer, Philadelphia, PA, for Plaintiff.

## MEMORANDUM OF DECISION

RUETER, United States Magistrate Judge.

Presently before the court is the defendant's motion for summary judgment, and plaintiff's response thereto. For the reasons that follow, the motion is granted.

## I. BACKGROUND

Plaintiff Omne Services Group, Inc. ("Omne") is a New Jersey corporation which is in the business of providing temporary workers and outsourcing services to its customers. (Declaration of Barry Sinins, 3/27/98, ¶ 2, hereinafter "Sinins Decl."). For a fee, Omne provided outsourcing services for two customers, Metro Labor Solutions ("Metro"), and four companies owned by

Timothy R. Kraft ("Kraft"). According to the Complaint, Omne's employee, Steven Sabolsky, caused Omne to enter into contracts with these two companies whereby the companies would outsource their employees to Omne, that is, the workers would be placed on Omne's payroll so that Omne had the legal responsibility to pay taxes and unemployment insurance premiums. Furthermore, Omne assumed workers compensation liability for all the companies' employees. (Sinins Decl. ¶ 2.) However, the employees of these companies continued to provide services to their companies after they were outsourced to Omne. (Complaint ¶ 10).

At all times relevant hereto, Hartford Insurance Co. ("Hartford") provided Omne with a "Commercial Crime Policy" (the "Crime Policy") which provided insurance coverage for monetary loss which Omne sustained by reason of "Employee Dishonesty." The Hartford Crime Policy provides that the "Limit of Insurance" is $100,000 per occurrence. The terms "Employee Dishonesty", "Employee" and "Occurrence" are defined in the Crime Policy.

Omne's complaint against Hartford alleges that because of the dishonesty of two of its "employees," Steven Sabolsky and Kraft, it sustained losses in excess of $600,000. (Complaint ¶ 13.) Omne made a claim with Hartford for the losses, but Hartford has denied coverage. In its complaint, plaintiff alleges breach of contract (Count I); that Hartford breached its common law "duty of good faith and fair dealing" (Count II); and that Hartford has acted in bad faith (Count III). Hartford's motion for partial summary judgment only addresses the breach of contract claim.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that if "there is no genuine issue as to any material fact", "the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party sustains its burden, the non-moving party must then

"make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992). The "non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact," *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir.1994), or replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. In assessing whether the non-moving party has met its burden, the court must focus on both the genuineness and the materiality of the factual issues raised by the non-movant. An issue is "genuine" only if there is sufficient evidence from which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248, 106 S.Ct. 2505. A factual dispute is only "material" if it might affect the outcome of the case. *See id.* A dispute over irrelevant or unnecessary facts will not preclude summary judgment. *Id.*

When considering a motion for summary judgment, the court must draw inferences in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *See id.* at 255, 106 S.Ct. 2505. The court may not make credibility determinations or weigh the evidence. *Id.* at 252. If the record thus construed could not lead the trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

Defendant's motion for partial summary judgment raises two issues. First, was Kraft an "employee" of Omne as the term is defined in the Crime Policy. Second, was there more than one "occurrence" as that term is defined in the Crime Policy. This second question is important since the Crime Policy pays no more than $100,000 per occurrence. (Crime Policy, Employee Dishonesty Coverage Form, ¶ B.)

### 1. Definition of "Employee"

The Crime Policy provides payment for loss of money caused by "employee dishonesty." Employee dishonesty means

only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, ..., with the manifest intent to:

(1) Cause you to sustain loss; and also

(2) Obtain financial benefit ... for:

(a) The "employee;" or

(b) Any person or organization intended by the "employee" to receive that benefit.

(Crime Policy, Employee Dishonesty Coverage Form ¶ D.3.a.) The Crime Policy defines "Employee" to mean:

a. Any natural person:

(1) While in your service (and for 30 days after termination of service); and

(2) Whom you compensate directly by salary, wages or commissions; and

(3) Whom you have the right to direct and control while performing services for you; or

b. Any natural person employed by an employment contract or while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises."

(Crime Policy, Crime General Provisions ¶ C.1.)

In its motion, Hartford does not contest that Steven Sabolsky was an "employee" of Omne within the terms of the insurance policy. (Def.'s Mem.Supp. Summ. J. ("Def.'s Mem.") at 2.) However, Hartford contends that at no time was Kraft an "employee" of Omne under the terms of the Crime Policy. Instead, Hartford argues that Kraft was the customer of Omne, and the recipient of Omne's outsourcing services. Because the undisputed facts demonstrate that Kraft was not an "employee" of Omne, as that term is defined in the Crime Policy, summary judgment must be granted against plaintiff for

any claim of loss sustained by the dishonest acts of Kraft.

The undisputed facts show that on or about April 15, 1995, Steven Sabolsky presented to Omne four (4) corporations which were owned and controlled by Kraft as prospective customers for the "PASS" program, which is an acronym for "Payroll Any Supplemental Services." Under the PASS program, Omne assumes the responsibility of handling all of the paperwork, tax reporting requirements, etc...., applicable to a particular customer's payroll and work force. Omne issues its own checks drawn to the order of the customer's employees. The customer is then invoiced by Omne for full reimbursement of the amounts paid out by Omne to the customer's employees, plus Omne's fee for providing the administrative service. The customer's employees remain in the service of the customer; they perform no work for Omne. (Sinins Dep. at 19–20.)

Steven Sabolsky had the responsibility of administering the Kraft accounts for Omne. According to plaintiff, Sabolsky had worked for Kraft in the past as a financial consultant. (Statement of Sinins, 5/22/96, ¶¶ 16–17, attached as Ex. N to Def.'s Mem.) By July 6, 1995, the four Kraft corporations for which Omne had funded payrolls under the PASS program, collectively owed Omne approximately $350,000.00. (Complaint ¶ 21; Def.'s Mem. Ex. J.) Plaintiff alleges that Kraft, with the knowledge of Sabolsky, placed friends, relatives, creditors and investors on Omne's payroll. (Complaint ¶ 18.) None of these persons were bona fide employees of his company. (Statement of Sinins, 5/22/96, ¶¶ 4–6.) According to the plaintiff, "Kraft

took the funds generated and diverted them to his own purpose, while building up a large balance due. Eventually Kraft absconded and is now the subject of an FBI investigation." (Pl.'s Mem. Opp. Summ. J. ("Pl.'s Mem.") at 4.)

■ "Where the language of an insurance policy is clear and unambiguous, it must be given its plain and ordinary meaning." *12th Street Gym, Inc. v. General Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir.1996) (applying Pennsylvania law). As the Third Circuit recently explained:

> But "[w]hen the terms of an insurance contract are clear, ... it is the function of a court to enforce it as written and not make a better contract for either of the parties." Thus, as we have explained, a court must not "torture" the language of a contract to create ambiguity where none exists. "[T]he words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability."

*Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 520 (3d Cir.1997) (applying New Jersey law) (citations omitted). Plaintiff does not contend that the terms of the Crime Policy are ambiguous.[1] Under the plain meaning of the language of the Crime Policy, in order for Kraft to have been an "employee" of Omne, he had to have been "in [Omne's] service," and Omne has to have "the right to direct and control [Kraft] while [Kraft was] performing services for [Omne]." The undisputed facts demonstrate that Kraft never was in Omne's service, nor ever "performed services" for Omne.[2] Kraft

---

1. Although not argued at length in its memorandum of law, plaintiff notes in passing that an insurance contract must be interpreted to meet the reasonable expectations of the insured. (Pl.'s Memo, at 4.) Generally, under the reasonable expectations doctrine, a court will not enforce the language of a policy excluding coverage "when the insurer unilaterally alters the insurance coverage requested by the insured." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 905 (3d Cir.1997)(applying Pennsylvania law). *See also Lehrhoff v. Aetna Casualty & Surety Co.*, 271 N.J.Super. 340, 346–47, 638 A.2d 889, 892 (1994) (reasonable expectations of coverage raised by declarations page cannot be contradicted by policy's boilerplate unless declarations page itself clearly so warns insured). Here,

plaintiff has come forward with no evidence to suggest that at the time the Crimes Policy was issued, the Hartford or its agent created in Omne a reasonable expectation of coverage that is not supported by the terms of the policy so that that expectation will prevail over the language of the policy. Therefore, this court must enforce the plain language of the policy. *See Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 (3d Cir.1994).

2. The Crime Policy does not define the term "service" as used in the definition of "Employee". Therefore, the parties and this court are proceeding using the commonly accepted definition of "service": "1. The occupation or duties of a servant. 2. Employment in duties or work

was never a temporary worker furnished by Omne to any of its clients, nor was he ever a part of Omne's corporate staff. Kraft never signed an "Employment Contract," as did Steven Sabolsky and as did other members of Omne's corporate staff. (Sinins Dep. at 28–31.) Indeed, Omne's President and CEO, Barry Sinins, never met Kraft. *Id.* at 21. While Kraft did place himself on the PASS program payroll, and Omne issued paychecks to Kraft, he was an employee only on paper. Kraft was never an "employee" as defined in the Crime Policy, as he did not perform services for Omne.

Plaintiff argues that Kraft did perform services for Omne "in connection with assuring that the appropriate payroll information was transmitted to Omne's office in New Jersey." (Pl.'s Mem. at 11.) It is clear that Kraft, as the owner and officer of four Kraft corporations and the customer of Omne, provided this payroll information not while in Omne's "service," but in execution of his duties as an officer for his companies to ensure that Omne had all the necessary information to process his employee's paychecks. (Sinins Dep. at 23–28.)

Moreover, even if Kraft were to have performed services to Omne, the undisputed facts show that Omne had no "right to direct and control [Kraft] while performing services for [Omne]." The only evidence plaintiff submitted to support its right to control Kraft is an employee pamphlet given to temporary and outsourcing employees which instructs such temporary workers how to dress, complete time sheets, etc ... (Pl.'s Mem. Ex. A.) The instructions in the employee pamphlet directed to temporary employees do not apply to Kraft. Kraft was not an employee employed by Omne on temporary assignment to the Kraft companies. Omne had no right to fire Kraft, or to discipline or control him in any way. Even if Omne no longer provided the Kraft companies with payroll and related services, Kraft would still be the owner and principal officer of the Kraft companies. The arrangement between Kraft's companies and Omne was purely an outsourcing arrangement. Therefore, for all the above reasons, Hartford has no duty to

pay Omne for any losses caused by dishonest acts of Kraft.

### 2. *One Occurrence*

Having established that Kraft was not an "employee" of Omne, the remaining issue to be decided is whether there was one "occurrence" as the term is used in the Crime Policy. In addition to alleging loss as a result of its contract with the four Kraft companies, plaintiff claims it suffered losses from its contract with Metro Labor Solutions. On or about April 1, 1995, Steven Sabolsky introduced Omne to Metro as a prospective customer for the PASS program. Omne entered into a contract with Metro, and Sabolsky was in charge with the responsibility of administering the Metro account. By July 28, 1995, Metro owed Omne nearly $350,000.00. (Complaint ¶ 27; Def.'s Mem. Ex. K.) After Metro presented Omne with three (3) checks totaling in excess of $200,000.00, all of which were returned by Metro's bank for insufficient funds, Metro went out of business and its owners fled the country. *Id.* According to the plaintiff, Metro's officers, Tony Phung and others, placed nonexistent employees on Metro's payroll and caused paychecks to be issued in the names of these phantom employees. The paychecks were then fraudulently endorsed and cashed to obtain the proceeds. According to plaintiff, two participants in the scheme pled guilty to federal criminal charges. Plaintiff accuses Steven Sabolsky of complicity in the fraud by receiving cash from Phung in return for assisting with the criminal scheme. (Pl.'s Mem. at 4.)

Plaintiff claims that both the Metro loss and the Kraft loss were caused by dishonest acts of its employee Steven Sabolsky. (Sinins Statement, 5/22/96, ¶¶ 14–17.) Hartford disputes this claim, but recognizes that the issue of Sabolsky's actions is a disputed one which the jury must decide. However, Hartford contends that both the Metro and Kraft losses were one occurrence under the Crime Policy and, thus, it can have no liability to Omne on its basic claim of breach of contract

for another, ... 5. Work or duties performed for a superior. 6. Work done for others as an occupation or business <a housecleaning *service*

$...." *Webster's II New Riverside University Dictionary* 1066 (1988).

for any damages in excess of the $100,000.00 Limit of Insurance. This court agrees and, accordingly, judgment will be granted against plaintiff to the extent it seeks payment from Hartford for any loss in excess of $100,000.00.

The Crime Policy defines "occurrence" as follows: "'Occurrence' means *all loss caused by*, or involving, *one* or more *'employees*,' whether the result of a single act or series of acts." (Crime Policy, Employee Dishonesty Coverage Form ¶ D.3.b.) (emphasis added). Under both New Jersey and Pennsylvania law,[3] "an occurrence is determined by the cause or causes of the resulting injury." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir.1982). The court's inquiry is whether there "was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *Id. Accord PECO Energy Co. v. Boden*, 64 F.3d 852, 856 (3d Cir.1995); *Doria v. Ins. Co. of North America*, 210 N.J.Super. 67, 72–75, 509 A.2d 220, 222–24 (1986); *See generally*, Michael B. Sullivan, Annotation, *What constitutes single accident or occurrence within liability policy limiting insurers' liability to a specified amount per accident or occurrence*, 64 A.L.R.4th 668 (1988). Because Omne has claimed that the employee dishonesty of Steven Sabolsky, "acting alone or in collusion with other persons," was the cause of the losses for which it made a claim to Hartford, there is but one "occurrence" and Hartford cannot be liable for indemnity in excess of $100,000.00. *See Business Interiors, Inc. v. Aetna Casualty and Surety Co.*, 751 F.2d 361, 363 (10th

Cir.1984) (employee's fraudulent acts constituted one occurrence under an employee dishonesty clause in an insurance contract since losses resulted from one cause, i.e. the continued dishonesty of one employee).[4]

Plaintiff argues that for there to be one "occurrence", the dishonest acts of Sabolsky must have occurred in a "series," requiring a connection or relationship between the acts. Assuming this interpretation is correct, the undisputed evidence does show that Sabolsky's acts were similar and connected in time. Sabolsky allegedly entered into his illicit combination with Metro and Kraft employees at about the same time, in April 1995 and the Kraft and Metro losses occurred, at about the same time, in July of 1995. Furthermore, plaintiff alleges that Sabolsky's misconduct with Metro and Kraft was similar—knowingly permitted Omne's customers to put persons on Omne's payroll who were not bona fide employees. While Sabolsky may have acted in collusion with different persons employed by Kraft and Metro to defraud Omne, this fact does not mean that there does not exist a spatial or temporal connection between the acts. *See Doria*, 210 N.J.Super. at 74, 509 A.2d at 224 (a factor used to determine that there is one occurrence is closeness of connection in time and space between the cause and result). Thus, under the plain terms of the policy and the definition of occurrence commonly used in insurance parlance, the court concludes that one "occurrence" happened here.[5]

For all the above reasons, the court will grant defendant's motion for partial sum-

3. The parties have not agreed on whether Pennsylvania or New Jersey law applies. However, because each state applies identical definitions of "occurrence", the court need not decide the choice of law question.

4. Aside from Steven Sabolsky, plaintiff has not come forward with any evidence that any other Omne employee committed dishonest acts that caused the loss. Therefore, plaintiff's argument that summary judgment cannot be granted because a jury might find two separate occurrences because two different Omne employees may have caused the Metro and Kraft Company is without merit, since it is premised on the erroneous supposition that there is evidence from which a jury could find that another Omne employee, aside from Sabolsky, was responsible for the losses.

5. Plaintiff has argued that there was more than one "occurrence" because there were two schemes to defraud. The question before the court is not whether there is a single or multiple schemes under the mail or wire fraud statutes, *see United States v. Maker*, 751 F.2d 614, 625 (3d Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985). Rather, the issue is whether, under the language of the policy, Sabolsky caused *all* the loss, whether by committing one act, or a series of acts of dishonesty. Since the Hartford policy does not use the word "scheme" in its definition of "occurrence", the single versus multiple schemes terminology does not further the task of interpreting the insurance contract.

**720**

mary judgment. An appropriate order follows.

### ORDER

AND NOW, this 4th day of May, 1998, upon consideration of defendant's motion for partial summary judgment (Document No. 10), and plaintiff's response thereto, and for the reasons stated in the accompanying Memorandum of Decision, it is hereby **ORDERED** that the motion is **GRANTED.** Hartford has no duty to pay plaintiff for losses caused by the dishonest acts of Timothy R. Kraft. Hartford's duty to pay for losses caused by the dishonest acts of Steven Sabolsky is limited to $100,000.00.