879 A.2d 1252 (2005)
379 N.J. Super. 589
Wesley BOMBA, John Bouthillette and Donna Bouthillette, his wife, Plaintiffs-Appellants,
v.
STATE FARM FIRE AND CASUALTY COMPANY; Edward Abrams, Sr., and Joyce Abrams, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2005.
Decided August 25, 2005.
Jennifer L. Haine argued the cause for appellants (Martin, Kane & Kuper, attorneys; James D. Martin, of counsel; Ms. Haine, on the brief).
Robert Zimmerer argued the cause for respondent State Farm Fire and Casualty Company (Zimmerer, Murray & Conyngham, attorneys; Mr. Zimmerer, of counsel and on the brief).
Ansell Zaro Grimm & Aaron, attorneys for respondents Edward Abrams, Sr., and Joyce Abrams (Brian E. Ansell, on the letter relying on the brief filed on behalf of appellants).
Before Judges A.A. RODRÍGUEZ, CUFF and HOENS.
The opinion of the court was delivered by
HOENS, J.A.D.
Plaintiffs Wesley Bomba, John Bouthillette and Donna Bouthillette appeal from the May 20, 2004 order of the Law Division denying their motion for summary judgment and granting defendant State Farm Fire and Casualty Company's cross-motion for summary judgment. We affirm.
This appeal raises an issue not previously addressed by our courts. The underlying declaratory judgment complaint sought coverage under a homeowners' insurance policy for claims by two police officers injured when the insureds' adult son fired a shotgun and hit the police officers multiple times. Specifically, the issue raised on *1253 appeal is whether the events leading to the officers' claims for their injuries constitute a single occurrence or a series of separate occurrences as that term is defined in the homeowners' policy.
The following factual summary forms the basis for the complaint and our analysis of the issues on appeal. On December 21, 2000, Bomba, who was the South River Police Chief, and Police Lieutenant John Bouthillette[1] responded to a report of gunshots being fired on William Street in South River. As they drove down that street, Edward Abrams, Jr., emerged from behind a van. He was dressed in camouflage attire and had a pump action shotgun which he was pointing up into the air. He then lowered the gun and fired into the police car, striking and injuring both Bomba and Bouthillette. The gunman next moved in front of the patrol car, firing again and striking both Bomba and Bouthillette a second time. Bouthillette then got out or was helped out of the car and fell down onto the roadway between the car and the curb. Bomba radioed for help, removed his seatbelt and fired several shots at the gunman from inside of the patrol car. In response, the gunman pointed the gun at Bouthillette but did not fire, retreating slightly. Bomba positioned himself between the gunman and Bouthillette, who was still on the pavement, unable to get up. At the same time, the gunman stopped and reloaded his shotgun. He then knelt and fired again at Bomba, striking him in the abdomen and causing Bomba to collapse. Another officer arrived and fired at the gunman, hitting him and wounding him fatally.
At the time of these events, the gunman resided with his parents, defendants Joyce Abrams and Edward Abrams, Sr. In January 2002, plaintiffs filed a complaint naming Joyce and Edward Abrams, Sr. as the only defendants. That complaint alleged that defendants negligently maintained firearms in their home, negligently supervised their son, and negligently entrusted the firearms to him. Defendants filed their answer, denying liability and asserting a variety of affirmative defenses. During discovery, plaintiffs learned that defendants Edward and Joyce Abrams maintained a homeowners' insurance policy with State Farm. The policy included personal liability coverage of $100,000 per occurrence, defined as follows:
Occurrence, when used in ... this policy, means an accident, including exposure to conditions, which results in:
a. bodily injury; or
b. property damage;
during this policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.
State Farm, in response to plaintiffs' demands, sought and was granted leave to deposit the $100,000 policy limit into court in November 2003.
Plaintiffs thereafter filed a declaratory judgment complaint against defendants Edward and Joyce Abrams and against defendant State Farm, seeking a declaration of the extent of the coverage afforded by the homeowners' policy. Shortly after they filed the declaratory judgment complaint, plaintiffs moved for summary judgment, asserting that each of the gunshots fired by the gunman constituted a separate occurrence for purposes of coverage under the State Farm policy. Defendant State Farm cross-moved, contending that there was only a single occurrence as it was defined by the policy language. State Farm argued that the only occurrence was the claimed negligence of the homeowners in permitting their adult son *1254 to have access to the gun that had led to the officers' injuries.
On May 20, 2004, the Law Division judge issued an order denying plaintiffs' motion and granting defendant State Farm's cross-motion for summary judgment. The following day, the judge issued a written opinion in which the judge agreed with defendants that there was a single occurrence within the meaning of the policy language. On appeal, plaintiffs raise two arguments for our consideration. They first assert that the motion judge erred by basing the analysis of the issue on the conduct of the named insureds for purposes of determining what caused the injuries to the two officers. Second, they argue that the motion judge erred in concluding that the policy language defining an occurrence was clear and unambiguous.
As our Supreme Court has instructed us, although in general we defer to the factual findings of the motion judge, see Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84, 323 A.2d 495 (1974), where the decision of the motion judge is based on an interpretation of law rather than one of fact, we owe it no special deference, see Manalapan Realty, L.P. v. Tp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995), but review the matter de novo, see Lawson Mardon Wheaton, Inc. v. Smith, 160 N.J. 383, 398, 734 A.2d 738 (1999). Because the decision before us in this appeal calls for an interpretation of law, we are guided by this latter standard.
We begin with a brief review of the published decisions on which the parties rely in their arguments on appeal. Plaintiffs assert that we should first be guided by the principle that ambiguities in an insurance policy are construed in favor of the insured or, as in this case, the party seeking the benefit of the coverage. See Doto v. Russo, 140 N.J. 544, 556, 659 A.2d 1371 (1995); U.S. Mineral Prods. Co. v. Am. Ins. Co., 348 N.J.Super. 526, 538-39, 792 A.2d 500 (App.Div.2002). They further assert that if the language of the policy is ambiguous, our analysis must be governed by the intent of the parties and the reasonable expectations of the insured concerning the extent of coverage. See Meier v. N.J. Life Ins. Co., 101 N.J. 597, 616-17, 503 A.2d 862 (1986).
Defendant State Farm does not disagree with these fundamental propositions. Rather, defendant points out that when the terms of an insurance policy are clear, those terms will be enforced so as to meet the expectations of the parties. See Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960). Defendant notes that our Supreme Court has cautioned that the courts must avoid writing a better policy for either the insurer or the insured than the one that the parties have created themselves. See Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 A.2d 208 (1989). Although conceding that ambiguities are to be construed in favor of the insured, defendant argues that it is inappropriate for the court to engage in a strained interpretation of the language of the policy simply to support a finding of coverage. See Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537, 582 A.2d 1257 (1990).
Turning to the specific issues raised on appeal, plaintiffs argue that there are "at least three" occurrences for coverage purposes, corresponding to the three shotgun blasts[2] that were the direct cause of their *1255 injuries. They rely on Doria v. Insurance Co. of North America, 210 N.J.Super. 67, 69, 73-74, 509 A.2d 220 (App.Div.1986), the seminal decision on interpretation of the occurrence clause in insurance policies in New Jersey, as support for their analysis. In addition, they point to language from the Supreme Court of the United States, see Queen Ins. Co. of Am. v. Globe & Rutgers Fire Ins. Co., 263 U.S. 487, 44 S.Ct. 175, 68 L.Ed. 402 (1924), to the effect that in coverage disputes we need look no further than the cause which is "nearest to the loss," id. at 492, 44 S.Ct. at 176, 68 L.Ed. at 404.
Plaintiffs also call to our attention several published decisions from Florida in which the courts of that state, when faced with similar factual circumstances, concluded that each shot fired by a gunman constitutes a separate occurrence. See, e.g., Koikos v. Travelers Ins. Co., 849 So.2d 263, 268 (Fla.2003); N.H. Ins. Co. v. RLI Ins. Co., 807 So.2d 171, 171-72 (Fla.Dist. Ct.App.2002); Am. Indem. Co. v. McQuaig, 435 So.2d 414, 415-16 (Fla.Dist. Ct.App.1983). At the same time, they urge us to reject the contrary reasoning of the Massachusetts appellate court, see RLI Ins. Co. v. Simon's Rock Early Coll., 54 Mass.App.Ct. 286, 765 N.E.2d 247, 253-55 (2002), and the Arkansas Supreme Court, see Travelers Indemn. Co. v. Olive's Sporting Goods, Inc., 297 Ark. 516, 764 S.W.2d 596, 599 (1989), that the motion judge found persuasive.
The applicable test for determining whether these facts constitute one or more occurrences was set forth by this court in Doria, supra. We there confronted the issue of how to interpret the occurrence language in a homeowners' policy when one boy fell into a swimming pool and a second child fell in while trying to save the first. Doria, supra, 210 N.J.Super. at 69, 509 A.2d 220. In deciding, we established the "cause test," which we defined as follows: "[F]or the purpose of counting the number of occurrences, the term must be construed from the point of view of the cause or causes of the accident rather than its effect." Id. at 72-73, 509 A.2d 220. We also explained that where a single cause resulted in injuries to more than one person, if those injuries "are so closely linked in time and space as to be deemed by the average person as a single event, there is but one occurrence." Id. at 69, 509 A.2d 220. We therefore looked beyond the fact that ultimately two boys were injured and concluded that for coverage purposes there was only one occurrence, namely, the chain of events started by the existence and condition of the insureds' pool. See ibid.
Applying the same logic to the facts of the matter now before us, we conclude that here, too, there was but one occurrence, namely, the negligence of the gunman's parents in permitting him to have access to the firearms in their home. Like the existence of the pool in Doria, the parents' negligence in storing firearms or in supervising their son's access to weapons is the event that started the chain of events and resulted in the eventual injuries to plaintiffs. As in Doria, the fact that there were two victims or several injuries when the homeowners' son fired his gun multiple times is not relevant, for coverage purposes, for determining the cause or for identifying the covered event. The Law Division judge's analysis therefore comports in all respects with the sound reasoning of the decision in Doria.
Moreover, in reaching this conclusion, we cannot avoid observing that plaintiffs' *1256 assertions about the cause of the injuries are based on a fundamental misunderstanding of the coverage analysis. Simply put, in the absence of a covered event, there can be no recovery under the policy at all. In this regard, we note that plaintiffs' complaint against the gunman's parents appropriately focused solely on their asserted acts of negligence rather than on the gunman's acts. That pleading recognized that for coverage purposes the alleged negligence of the homeowner is the appropriate focus.
Indeed, as the Law Division judge noted, if the action of the gunman, who repeatedly aimed and fired at the two police officers, is the cause of the injuries, then the officers' claims would not be covered under the policy, but would fail by virtue of the policy's exclusion for intentional or criminal acts. See, e.g., J.C. v. N.B., 335 N.J.Super. 503, 506-07, 762 A.2d 1062 (App.Div.2000), certif. denied, 168 N.J. 294, 773 A.2d 1157 (2001); Allstate Ins. Co. v. Schmitt, 238 N.J.Super. 619, 628-29, 570 A.2d 488 (App.Div.), certif. denied, 122 N.J. 395, 585 A.2d 394 (1990). The Law Division judge aptly described this as an intervening uncovered act which, if it were the cause, would result in a loss of coverage. As the judge recognized, the only act that would support coverage for these claims is the negligent act of the insureds, namely, their failure to safely maintain the weapons and their failure to properly supervise their adult son which led to his criminal act of shooting the two officers.
As a result of our analysis of our own published decision in Doria, we need not address the decisions called to our attention by both plaintiffs and defendant from other jurisdictions. We note, however, that the applicability of each of those decisions rests on an analysis of the particular policy language in each of them.
For this reason, careful review demonstrates that the plaintiffs' reliance on the Florida decisions is misplaced. In McQuaig, supra, for example, the homeowner himself was the shooter and the decision of the Florida appellate court turned on whether his multiple acts of pulling the trigger or the single asserted fact of his insanity was the cause of the injuries to the police officers. 435 So.2d at 415-16. In Koikos, supra, the Florida Supreme Court was called upon to construe language of a commercial general liability policy for shootings that took place in an insured commercial establishment. 849 So.2d at 268. In New Hampshire Insurance Co., supra, the Florida court's opinion provides so little detail that we cannot discern the basis for the court's reasoning, except for its direction that the matter be certified to that State's Supreme Court for consideration. 807 So.2d at 172. Therefore, the Florida decisions cited by plaintiffs offer no support for plaintiffs' assertions were we to consider them at greater length.
At the same time, however, we find the analysis in the precedents relied upon by the motion judge and called to our attention by defendant State Farm on appeal to be consistent with our reasoning. In RLI, supra, the appellate court in Massachusetts adopted an approach similar to ours. 765 N.E.2d at 253-55. That court analyzed the matter in terms of identifying the covered act under the policy issued to a college rather than by looking at the more immediate actions of a college student who injured many others in a shooting spree. Id. at 253-54. In RLI, as in the matter on appeal, the covered act was the failure of the college administration to properly supervise the student and the administration's negligence in providing a safe environment for others. Id. at 254. In Travelers, supra, the Supreme Court of Arkansas, after first adopting the cause test, concluded that the covered act under the sporting goods store's insurance policy was its sale of a firearm. 764 S.W.2d at *1257 599. That court therefore concluded that there was but one occurrence, even though the purchaser used the gun multiple times to injure others. Ibid. As with our own analysis, the most immediate cause of an injury may not be the cause for purposes of coverage.
Our review of these decisions from other jurisdictions therefore offers further support for our analysis of the policy language before us on appeal. We conclude that the motion judge correctly applied the cause test to the question of the number of occurrences and correctly concluded that there is but one occurrence cognizable under the policy in issue, namely the negligence of the gunman's parents, the covered homeowners, in their supervision of the gunman.
Affirmed.
NOTES
[1] Because Donna Bouthillette's claim is for loss of consortium only, our references in this opinion to Bouthillette are intended to mean John Bouthillette only.
[2] During the proceedings in the Law Division and, to some extent on appeal as well, plaintiffs have also asserted that each injury suffered by the two officers constitutes a separate occurrence for coverage purposes. We need not address this alternate theory in light of our disposition of the issue raised on appeal. Similarly, although defendants also raised an argument before the Law Division judge to the effect that the policy's reference to "repeated or continuous exposure" mandated a finding that these events constituted a single occurrence, that theory has not been urged on appeal and we need not consider it.